Thank you, Your Honor. May it please the Court, my name is Mary Pogalis. I'm here to argue on behalf of the appellant, Mr. Nunn, and to argue essentially for his right to have had a properly instructed jury and a fair determination of the credibility of the prosecution's star witness. I begin by pointing out to the Court matters of which there is no dispute that are fairly critical. One is, there is not a court or counsel below that has argued other than that the trial court committed legal error, instructional error, when it failed to give sua sponte the instruction concerning viewing the defendant's oral admissions with caution. Counsel, is this an AEDPA case or not an AEDPA case? Well, let me go to the end of my notes. It is, this is a case, the Johnson, as I argued in our brief, I believe that the Johnson decision does not control here. I think that this Court does not give deference to the Court of Appeal on its factual findings. That, and the reason is that when these appeals were filed and the Court of Appeal ruled on it below, there was no direct challenge on federal constitutional grounds to this due process error. It was, as I indicated in the pleadings, it was certainly mentioned. It was very much in passing, mentioned in the briefs filed on Mr. Nunn's behalf below, but it was never briefed, it was never discussed, it was never fleshed out, it was never addressed. And the Johnson court itself has indicated that it's an improper excisement of the merits requirement of AEDPA if the provision, the federal constitutional challenge, was simply mentioned in passing or buried in a string site, or if the state standard was quite different, which it certainly was here, it was the Watson standard, which is a standard applied by the California courts for non-constitutional error. If there was no effort made to develop the basis, and there certainly was no effort made to develop the basis of any federal due process claim below. Well then, assuming then that the Johnson v. Williams presumption has been rebutted, what is our role at this point? What is our standard of review and what are we looking at? I would say that this court's standard of review, in light of that, is controlled by Calderon. It's whether there was a substantial and injurious influence on the jury's verdict and deliberations caused by the legal error. Also, in this case, we've indicated in our pleadings that the appeal is taken in part because the court of appeal relied on clearly erroneous, unreasonable, factual finding that these oral admissions were uncontested. When in fact, without a doubt, that was the trial, every single thing was contested, including every bit of testimony from this girl as to what she claimed Mr. Nunn had said to her in the course of these offenses. In light of that, what is the federally protected constitutional right that is at issue here? I see a lot of state law issues, which of course we have no jurisdiction over, but I need help in finding what were you relying on in terms of what is the federal constitutional right at stake here? The federal right is clearly set out in Estelle v. McGuire. 1991, it's been the case for a long period of time. If there is a state court on a habeas petition, if there is instructional error in the court, which is conceded here by all parties and has been recognized by every court to look at it, then this court's duty, de novo, because Johnson doesn't apply, is to look at two things. To look at that instructional error in the context of the entire trial record and in the context of the other instructions to see whether the evidence or the other instructions somehow, for lack of a better word, cured that conceded error so that there was no prejudice, so that it was harmless. Let's talk about that. Didn't the trial court give a number of other instructions that were directly, I guess maybe directly or indirectly relating to this whole issue? It looks like the trial court instructed the jury on witness bias and motive to lie, weighing conflicting witness testimony, a witness's prior consistent or inconsistent statements and testimony discrepancies. In addition, I think there was physical evidence to support the young girl's allegations. And then your client was able to testify or did testify and was able to deny the oral admission. So considering the standard that we're looking at as to whether this error so infected the trial, what's your best argument that it did? Here's the best argument. First, we begin with the presumption of innocence. The jury had to answer the question whether or not Mr. Nunn really did what this girl said. And you know from reviewing the record yourselves that she was pretty severely impeached. There was overwhelming evidence that she was quite emotionally unstable, that she had multiple motivations to want to get him off the scene so she could return to the really close relationship she had had with his wife and his infant son before. All those motivations. Are you saying her testimony was completely unnecessary to the charges of conviction? I'm sorry. I think I was still talking when you started your question. I'm sorry. I'm trying to clarify what you're saying about her testimony, the star witness, the young woman. Yes. Was her testimony completely unnecessary to the charges of conviction? Oh, no, no, no. It was critical. But it was severely impeached is what I'm saying. So when the jury says, did he really do this, they're looking at the prosecution's chief witness who was severely impeached, and then they have to look at what's going to rehabilitate that. Now, they obviously did that. They went and looked. They looked at the medical evidence, which was, frankly, inconclusive of any fact except that there had been some, at some point in this girl's life, some vaginal penetration. The expert couldn't say a finger, an object, a penis, whatever it was, once maybe, maybe multiple times, who it was, no evidence whatsoever. The problem is once the jury looked at all that impeachment and said, well, can we still believe her, then they had to go to the court's instructions, other instructions, which told them that they could use those oral admissions, which were the evidence that explained why six months before she reported this, why they should believe her despite all this. Because the judge said to them they could use that for the truth of the facts stated on the prior occasion. They could use it to prove a fact mentioned by that previous statement. They could use it and naturally look askew or differently at Mr. Nunn's testimony because those statements were inconsistent with his trial testimony. In other words, many of these other instructions they received took them right off. Not only were they not told to view it with caution, they were told they could rely on those to affirmatively prove his guilt. Counsel, you're down to two minutes. You may wish to reserve. I would. I think I would like to reserve. Thank you. We'll hear from the state. Good afternoon. May it please the court. My name is Pam Critchfield with the California Attorney General's Office. I represent the respondent. Ms. Critchfield, can we start where your opposing counsel left off on the trial court instructing the jury that they could use the oral admissions and because of that, that that defeats or apparently meets the burden of substantially infecting the trial? I believe that she's referring to the prior consistent and inconsistent statement, standard Calgic instruction, which is just telling the jury that if somebody gets on the stand and they said something different in the past, that that can be considered to determine whether they're telling the truth at the time or not. I believe that if you look at the instructions as a whole, the jury was told how to assess the credibility of witnesses generally. This was a cautionary instruction that was given that the jury clearly did not believe the defendant and they believed the victim. Counsel, let me ask the same question I asked of counsel. Is this an AEDPA case or not? Yes, we submit that it is. Why? Because the federal constitutional claim was raised in the state court and in the petition for review in the state, in the Supreme Court, Cal Supreme Court. It was raised prominently in the heading of the argument. It was the failure to give this instruction violates both state and federal constitutional law. I don't believe, we don't believe that John's. But don't we look at the determination made by the state court? What is it in the opinion of the court that suggests that they were also deciding the federal question? It's implied in the decision. Well, that's not enough. You have to give us something to base it on. Under Johnson, I believe it is unless the, unless it's rebutted. There's a presumption that the state court has reached the federal claim unless it is rebutted by the appellant. And I believe that's what Johnson held because when it reversed this court in the lower, because this court had found, well, the state court didn't reach it. So, therefore, we're going to say we have to look at it de novo. And I believe the Supreme Court is saying no, even if they don't reach it, it's a rare circumstance when they don't. What's your response to your opposing counsel's suggestion that Johnson has been rebutted in this case? I would argue it has not been rebutted. Number one, they did raise the argument. It was in the heading in both the Supreme, in the court of appeal brief and in the petition for review. But looking at the court of appeals decision, cited only state cases, discussed only state law, applied California's harmless error standard, and reached another federal claim, correct? Correct. That was the Eighth Amendment claim, which, right. So it knew how to reach a federal claim. Yes. And I think in this case, so the state court found no error, or found that, yes, there was an error. Sui sponte duty to give that instruction, and that it is, under Watson, it was harmless, under the state law harmlessness standard, which is very similar, coextensive to both the Estelle v. McGuire standard and the Brecht standard, which would be secondary to the Estelle v. McGuire standard when you're analyzing it under the federal constitutional violation. And I would argue that the Supreme Court in Johnson said if the analysis is coextensive, to the extent that it's coextensive, that would show that the presumption was not rebutted. Counsel, if we don't reach the question, would it make any difference in the dispute? No. It wouldn't make any difference. Why? Because, as I said, the Estelle v. McGuire standard, which then you go to a Brecht after that, is really no different than the Watson harmless state harmless error standard. And I think I briefed that fully. Anything further? No. If there are no more questions. Just one quick question. Do you also concede that the state court's factual finding that Mary's testimony was uncontradicted? No, I don't. We do not concede that, that her testimony. She, her testimony was corroborated. She, there were medical evidence that showed tears to her hymen that were consistent with having sexual intercourse. And that was not, there was that. Then also, she consistently told her story to, and two weeks after he left, it wasn't six months, it was two weeks after he left the home, the defendant left the home, she went to her basketball coach, she told the story that he's been, we've been having sex. The basketball coach then reports it to CPS and to the police. She tells the same story to them. She then talks to another police officer, tells the same story, and she tells the same story again to the nurse practitioner who conducted the exam. So none's testimony has no weight in that calculus? Well, the jury didn't find it had weight. The jury didn't believe him. There are no further questions. Thank you, counsel. Ms. Pagolos, you have some reserved time. Yes, Your Honor. I would first say that uncontested is not the same as credible. What counsel just argued is that there were a lot of reasons to find that the girl was credible. There were equally large, maybe greater number of reasons to find her not to be credible. That is not the same as saying that the defendant failed to contest whether or not he made those oral statements. He clearly contested it from start to finish in every way he could. So it is not correct to say that the state court was right or anywhere near being right factually when it relied 100 percent on that fact to satisfy the trial record analysis of the evidence, to find harmless error because it was uncontested. That's simply wrong. And being as wrong as it was, it was also unreasonable and a basis for habeas. Counsel, can we go back to the question I was asking before you reserved time? Help me understand how you map the counts of acquittal and the counts of conviction onto the testimony, given what you're saying about Mary's testimony. Yes, that was the other thing I was going to say here, is that it's not correct to say that the jury believed Mary, simply believed her. They didn't. They acquitted him of two counts. Now, it's pretty clear from that that medical evidence was that there was no evidence that they could detect through that examination of anal sex. Also, she said that this happened in the hallway upstairs when the defendant's wife, his kids, her family, her parents, I think maybe even her grandfather, were right there in the house. It was a tough one for anyone to believe that he had actually done that. He denied it. So they didn't believe her. This is why I say I think they moved to his oral admissions to explain why she waited six months to say anything to anyone, why, you know, she had all these motivations to fabricate. And, you know, on that basis, they were certainly, and as to the standard of review, I only want to say it wasn't litigated. It was mentioned only in passing. Johnson doesn't apply. Thank you, counsel. That red light tells us that your time has expired. Thank you. The case just argued will be submitted for decision.
judges: Mueller, O'scannlain, Murguia